# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

MARISOL OROSTICA,

Plaintiff,

-vs-                                                    Case No.  6:11-cv-532-Orl-GJK

COMMISSIONER OF SOCIAL
SECURITY,

Defendant.
_____

# MEMORANDUM OF DECISION

Marisol Orostica (the "Claimant"), appeals to the District Court from a final decision of

the Commissioner of Social Security (the "Commissioner") denying her application for benefits.

Doc. No. 1.  Claimant argues that the final decision of the Commissioner should be reversed and

remanded for an award of benefits or for further proceedings for three related reasons: 1) the

Commissioner erred in determining Claimant's residual functional capacity (the "RFC") by

failing to consider the effects of chronic absenteeism on the Claimant's ability to work, the

effects of an March 23, 2007 stroke, and by making findings as to Claimant's mental limitations

without any evidence regarding such limitations; 2) the ALJ's hypothetical question to the

vocational expert (the "VE") did not include all of Claimant's limitations; and 3) the ALJ's

credibility determination is not supported by substantial evidence.  Doc. No. 16 at 2-3; 9-19.  For

the reasons set forth below, the final decision of the Commissioner is **REVERSED and**

**REMANDED** for further proceedings because the Court cannot determine whether the ALJ's

rejection of Claimant's allegations of chronic absenteeism is supported by substantial evidence

due to the Appeals Council's failure to demonstrate that it properly evaluated the new and material evidence.

## I.  BACKGROUND.

On September 22, 2008, Claimant filed an application for benefits alleging an onset of disability as of August 12, 2008.  R. 140-50.[1]  Claimant alleges disability due to cardiomyopathy, chronic transient ischemic attacks – mini-strokes, multiple cerebrovascular accidents – strokes, atrial fibrillation, vasovagal syncope, obesity, hypertension, shortness of breath, dizziness, and chest pain.  R. 30, 77, 80, 178, 187, 192.   Claimant's application was denied initially and upon reconsideration based upon the opinions of non-examining physicians, Drs. John A. Dawson and Gloria Hankins.  R. 75-82, 551-58, 746-53.   A summary of the relevant medical record is set forth below.

### A.  Medical Record.

On October 24, 2006, Claimant presented to Orlando Regional Healthcare Systems complaining of right-side body numbness and numbness.  R. 458.   A note in a computed tomography scan ("CT scan") report states that Claimant suffered a "small left temporal lobe insular cortex acute infarction" on October 8, 2006.  R. 458.   The CT scan of Claimant's head was normal.  R. 458.   A chest x-ray performed on the same day suggested "mild congestive heart failure."  R. 459.   An October 25, 2006 magnetic resonance imaging ("MRI") report states that

---

[1] In the ALJ's decision, the ALJ states that Claimant's alleged onset date is October 24, 2006.  R. 10.  The Claimant's application clearly states that the alleged onset date is August 12, 2008.  *See* R. 140, 147.  Claimant maintains that the ALJ's alleged onset date is a factual error.  Doc. No. 16 at 4 n. 1.  The Commissioner does not specifically address the issue, but adopts the ALJ's onset date.  Doc. No. 17 at 1.  In Claimant's "Disability Report," which was completed by a state agency employee, Claimant states that she stopped working due to her impairments on October 24, 2006.  R. 173.   Thus, there is record support for both alleged onset dates.  R. 140, 147, 173.  Nevertheless, resolution of the issue is not dispositive of the case and the Court utilizes the alleged onset date contained on the application for disability benefits.  R. 140, 147.

Claimant suffered a cerebrovascular accident ("stroke") on October 8, 2006. R. 460.  The MRI showed "findings . . . consistent with a relatively small subacute ischemic infarction," but "[n]o evidence of any hemorrhagic component."  R. 460.  A magnetic resonance angiogram ("MRA") performed on the same day was normal.  R. 461.  An echocardiogram test was also largely normal.  R. 470-71.  On October 26, 2006, a tilt-table test was positive for "neurocardiogenic syncope with primary vasodepressor components."  R. 473.

On February 12, 2007, Claimant presented to Florida Hospital complaining of chest pain and palpitations.  R. 330, 334.  A 24-hour Holter monitor revealed no tachyarrhythmia and "no correlation with symptoms."  R. 334.  An MRI of the chest showed mild septal hypertrophy, dilated left atrium, and an atrial septal defect closure device in the right atrial aspect. R. 333.  A chest x-ray revealed "no radiographic evidence of acute cardiopulmonary disease."  R. 330.

On February 22, 2007, Claimant was admitted to the emergency room at Orlando Regional Health Systems complaining of chest pain with associated dizziness and shortness of breath.  R. 246-68.  Dr. Anthony Alatriste's treatment notes show that Claimant has a history of a stroke with "no significant deficit" and a positive tilt-table test.  R. 249.  Physical examination was largely normal except for an irregular heart rhythm. R. 250.  Dr. Alatriste's impressions included angina, ischemia, and atrial fibrillation.  R. 251.  Chest x-rays and a CT were normal and negative for an acute intracranial hemorrhage.  R. 258-59.  On February 23, 2007, a Doppler echocardiogram revealed mild to moderate tricuspid regurgitation and trace pulmonic insufficiency.  R. 260-61.  Claimant was discharged on February 23, 2007, and the discharge note states that Claimant may resume normal activity on February 26, 2007.  R. 268.

On March 23, 2007, Claimant presented to Florida Hospital complaining of right-sided

weakness.  R. 324.  An MRI of the brain revealed a "small amount of petechial hemorrhage at the left insular cortex, in an amount which is unremarkable on diffusion," and "edema with minimal enhancement at the superior insular cortex of the left temporal lobe, in a pattern most compatible with subacute infarction."  R. 324.  Although the MRI reveals that Claimant suffered a stroke, there are no other significant treatment records from March 23, 2007, in the record.

On March 28, 2007, Dr. Luis Morales, one of Claimant's treating physicians, noted that Claimant complained of "[n]o chest pain or discomfort, no palpitations, and the heart rate was not fast."  R. 536.   Dr. Morales diagnosed Claimant with well controlled hypertensive heart disease, hyperlipidemia, transient ischemic attack, and "stroke syndrome which is inadequately controlled."  R. 538.

On April 4, 2007, treatment records reveal that Claimant stopped taking Coumadin, which is a blood thinner medication, because of a possible allergic reaction.  R. 327.  On June 27, 2007, Claimant was admitted to the emergency room until June 28, 2007, after experiencing a sudden onset of palpitations.   R. 366.  Claimant stated that she had stopped taking Coumadin because it caused bleeding gums and easy bruising.  R. 366.  Physical examination revealed atrial tachycardia and Claimant was admitted for cardiac evaluation.  R. 366.  Chest x-rays revealed no infiltrates, but low lung volumes.  R. 294, 367.

On July 21, 2008, Claimant was admitted to the emergency room for one day after presenting with complaints of dizziness.  R. 362-65.  Claimant was noted to have atrial fibrillation, but a CT scan of the brain was negative for a stroke.  R. 362.  On August 12, 2008, Claimant was admitted to the emergency room for two days with complaints of palpitations.  R. 351-61, 372-74.  A CT scan of the chest was normal and a chest x-ray revealed cardiomegaly,

but pulmonary infiltrates could not be ruled out.  R. 352.  Claimant was discharged on August 14, 2008, with a diagnosis of atrial fibrillation with a controlled ventricular rate and obesity.  R. 354.

On October 20, 2008, Claimant was admitted to Florida Hospital for seven days due to abdominal pain, paresthesias and transient ischemic attack ("mini-stroke") symptoms.  R. 396-408.  Claimant reported that she has previously suffered 9 strokes.  R. 404.  The hospitalist's impressions were atrial fibrillation, dyslipidemia, mini-strokes secondary to atrial fibrillation, and morbid obesity.  R. 401.  Claimant refused to take Coumadin due to its side-effects.  R. 398-99, 401.  An MRI revealed "bilateral focal necrosis without definite evidence acute infarction and acute hemorrhage," but Claimant was "thought to have [mini-strokes] secondary to atrial fibrillation."  R. 397.  The treatment notes also state that the CT scan conducted on July 21, 2008, was negative and showed "no evidence of acute or prior strokes."  R. 532.

On November 3, 2008, Claimant presented to Dr. Morales with a normal physical examination, but Dr. Morales noted that Claimant suffers from recurrent mini-strokes.  R. 544.  Dr. Morales's assessment was atrial fibrillation, hypertensive heart disease, and mini-strokes – two episodes.  R. 545.

On November 17, 2008, Dr. Sam Ranganathan conducted a consultative physical examination of Claimant.  R. 548-49.  Dr. Ranganathan noted that Claimant "has been admitted to the hospital with transient ischemic attacks seen by the neurologist," but Claimant's physical examination was largely normal.  R. 548-49.  Dr. Ranganathan opined that Claimant suffers from atrial fibrillation and a history of hypertension and obesity.  R. 549.  Dr. Ranganathan offered no opinion regarding Claimant's mini-strokes, physical limitations, or ability to work.  R. 548-49.

On November 17, 2008, Claimant also presented to Dr. Morales for a follow-up regarding her mini-strokes. R. 892-95. Claimant reported that she was doing well with not recurrence of symptoms. R. 892. Physical examination was normal, and Dr. Morales opined that Claimant's mini-strokes were improving. R. 894.

On December 29, 2008, Claimant was admitted to the emergency room at Florida Hospital for two days with complaints of syncope. R. 562-70. Claimant reported that she has previously suffered 13 mini-strokes. R. 562. Dr. Catherine Hughes stated the following regarding Claimant's complaints:

> This is a woman with syncope and near syncope and was in atrial flutter with a rapid ventricular rate when she was admitted. I do not think this represents a transient ischemic attack. I do not think an MRI is needed at this point. Many other things that she is calling transient ischemic attack sound like they are more related to feeling diaphoretic and sweating when she has a rapid heart rate. I think that Coumadin apparently is being considered to be restarted as it does not sound like there is really a true allergy, more of a problem with heavy menstrual bleeding and other side-effects but not actual allergic reaction. . . .

R. 563. Thus, Dr. Hughes opined that Claimant's symptoms were not caused by mini-strokes. R. 563.

On February 11, 2009, Claimant was admitted to Florida Hospital for four days after experiencing a near syncope episode. R. 571. Upon admission Claimant reported that she passed out after cleaning the bathroom for two hours. R. 575. An MRI and CT scan of the brain revealed "no acute changes," and no evidence of a stroke. R. 571, 576, 583-84, 609-10. Claimant's discharge diagnoses were near syncope, atrial fibrillation, obesity, and history of a mini-stroke. R. 571.

On October 20, 2009, Claimant was admitted to the hospital for five days after

experiencing a hematoma in the right groin after heart catheterization status post debridement and evacuation.  R. 760.  On November 4, 2009, Claimant was admitted to Florida Hospital after suffering an acute cerebrovascular accident – a stroke.  R. 906.  An echocardiogram revealed trace mitral regurgitation, mild tricuspid regurgitation, and atrial septal defect.  R. 906.  An ultrasound of the bilateral coronary artery showed "minimal stenosis 0% to 39%."  R. 906.  A CT scan of the brain showed no acute changes, but an MRI showed "a large right-sided middle cerebral artery territory acute, subacute ischemic infarction involving right frontal parenchyma and right parietotemporal junction and right-sided insular cortex."  R. 906-08.  MRA tests of the head and neck were negative.  R. 907.  The hospital notes show that Claimant was off Coumadin and physical examination revealed left upper extremity weakness and mild left facial palsy.  R. 907.  Claimant received medication, physical, occupational, and speech therapy.  R. 907.  The November 4, 2009 treatment records were the last piece of medical evidence available to the ALJ.

### B.  Proceedings Before the ALJ.

Claimant requested a hearing before an ALJ and, on August 10, 2010 a hearing was held before ALJ Angela Miranda.  R. 25-59.  Claimant and vocational expert Randolph Salmons were the only persons to testify.  R. 25-59.  At the hearing, Claimant argued that she is disabled because her medical impairments cause her to miss too many days of work to sustain gainful employment. R. 30-32. The vocational expert testified that if an individual was absent from work about 20 percent of the time, no jobs are available that such an individual could perform.  R. 57.

On October 25, 2010, the ALJ issued a decision finding Claimant not disabled.  R. 10-19.  The ALJ found that Claimant suffers from the following severe impairments: obesity; congestive

heart failure; cardiomyopathy; atrial fibrillation with rapid ventricular rate; neurocariogenic syncope; transient ischemic attacks secondary to atrial fibrillation; and one acute cerebrovascular accident in November of 2009.  R. 13.   The ALJ considered whether Claimant's impairments meet or medically equal a listing and stated:

> The [C]laimant does not meet listing 11.04 because there is no medical evidence in the record showing that more than 3 months after her [stroke], she had either sensory or motor aphasia or significant and persistent disorganization of motor function in two extremities.  The [C]laimant was hospitalized for acute cerebrovascular accident on November 4, 2009, but there is no subsequent dated evidence in the record.

R. 13.   Thus, because there is no medical evidence in the record subsequent to Claimant's November 4, 2009 stroke showing sensory or motor aphasia or significant and persistent disorganization of motor function in two extremities, the ALJ found that Claimant does not meet a listing.  R. 13.

The ALJ found that Claimant retains the RFC to perform a restricted range of sedentary work with postural, environmental, and mental limitations.  R. 13-14.[2]  In reaching the RFC

---

[2] Specifically, the ALJ found that:

> [T]he [C]laimant has the [RFC] to occasionally lift and carry up to 10 pounds and to frequently lift and carry light articles weighing less than 10 pounds.  The [C]laimant has the capacity to stand and/or walk up to 2 hours in an 8-hour workday and to sit up to 6 hours in an 8-hour workday.  The [C]laimant has unlimited ability to push and pull up to the capacity for lifting and carrying.  The [C]laimant has the capacity to frequently balance and occasionally stoop, kneel, crouch, crawl, and climb stairs and ramps.  The [C]laimant has no limitations in the capacity to reach, handle, finger, or in the ability to feel.  The [C]laimant has the capacity for occasional exposure to dust, fume[s], and other pulmonary irritants.  Considering the [C]laimant's subject complaints of angina and shortness of breath, mentally the [C]laimant has the capacity to understand, remember, and carry out simple, routine tasks.  The [C]laimant has the capacity to appropriately interact with supervisors, coworkers, and the general-public.  The [C]laimant has the capacity to identify and avoid normal work place hazards and to adapt to routine changes in the work place.

R. 14.

determination, the ALJ reviewed the medical record and the Claimant's testimony.  R. 14-18.[3]
The ALJ acknowledges that at the hearing Claimant argued that she is disabled because her
impairments will cause "substantial absenteeism."  R. 14.  After discussing the Claimant's
November 4, 2009 stroke, the ALJ notes that there is no other medical evidence in the record and
states:

> In sum, the above [RFC] is supported by the evidence of record,
> medical findings, and the [C]laimant's testimony at the hearing.  I
> find the evidence contained in the record does not support the
> [C]laimant's allegations of symptoms so severe as to preclude
> performance of any work since her alleged onset date.  Therefore, I
> find that the [C]laimant's subjective complaints and alleged
> limitations are not persuasive and the [C]laimant retains the ability,
> despite her impairments, to perform work activities with the
> limitations set forth above.

R. 17.  Thus, the ALJ specifically rejects Claimant's allegations that she is disabled because her
impairments would cause substantial absenteeism based on the medical record and lack of any
additional medical evidence after Claimant's November 4, 2009 stroke.  R. 16-17.

### C. Appeals Council.

At the Appeals Council, Claimant submitted additional evidence regarding a November
23, 2010 stroke.  R. 911-47.  On that date, Claimant was transported by ambulance to Central
Florida Regional Hospital experiencing facial drop, difficulty standing, walking and with
impaired speech.  R. 911.  Upon admission, Claimant was disorientated, displayed decreased
alertness, facial droop and weakness, impaired reflexes, and severe loss of strength in her right

---

[3]While the ALJ's review of the medical record is largely accurate, the ALJ fails to mention the Claimant's October
24, 2006, treatment records which indicate that Claimant suffered a stroke on October 8, 2006 and the March 23,
2007 MRI, which revealed a subacute infarction of the left temporal lobe.  *See* R. 14-18, 324, 460.  The ALJ notes
that a tilt table study on October 24, 2006 was positive for syncope, but the ALJ incorrectly states that "[t]he record .
. . is devoid of any other evidence around [October 24, 2006]."  R. 14.

hand, right leg, and right foot.  R. 912.  Physical examination revealed atrial fibrillation and a CT scan showed an infarction in the right middle cerebral artery affecting the temporal lobe.  R. 912, 933.  The record shows that the infarction may be subacute to chronic.  R. 912.  Roughly an hour after Claimant was admitted to the hospital she began to recognize family and was able to follow simple commands.  R. 913.  Thirty minutes later Claimant showed noticeable improvement in strength on her left side.  R. 913.   The record also shows that Claimant was not compliant with her Coumadin treatments.  R. 919.

On December 3, 2010, while admitted to the hospital, Claimant underwent a mental status consultative examination.  R. 922-23.  Claimant's speech was "not very coherent" due to "aphasia."  R. 922.  Claimant appeared to be showing "impaired insight and judgment."  R. 922.  Claimant was diagnosed with moderate to severe mood disorder not otherwise specified, cognitive disorder not otherwise specified, and was assigned a global assessment of function score of 48.  R. 922.  The consultative examiner also opined that Claimant "will need rehab."  R. 923.

On December 8, 2010, Claimant was discharged in a "completely medically stable" condition.  R. 924.  The records state that Claimant will require physical, occupation, and speech therapy, but the hospital was unable to place Claimant in a rehab facility as planned, and Claimant was discharged for out-patient rehab. R. 919, 924.  Thus, after the ALJ's decision, due to a stroke Claimant spent an additional sixteen (16) days in the hospital and was discharged for rehabilitation.  There is no other medical evidence in the record.

On January 27, 2011, the Appeals Council issued a decision stating that it "considered . . . the additional evidence," but "this information does not provide a basis for changing the

[ALJ's] decision."   R. 1-2.   Thus, the Appeals Council considered the new evidence of Claimant's November 23, 2010 stroke.  R. 1-4.  On April 4, 2011, Claimant appealed the final decision of the Commissioner in the District Court.  Doc. No. 1.

## II.   __THE ISSUE__.

As mentioned above, the Claimant raises three specific arguments on appeal: 1) the RFC is not supported by substantial evidence; 2) the hypothetical question to the VE does not include all of Claimant's limitations; and 3) the ALJ's credibility determination is not supported by substantial evidence.  Doc. No. 16 at 2-3, 9-19.  As to the first issue, Claimant argues that the Commissioner's RFC, which is based in large part on a rejection of Claimant's allegations of chronic absenteeism, is not supported by substantial evidence because the additional evidence submitted to the Appeals Council shows that Claimant was admitted to the hospital for an additional 16 days in 2010.  Doc. No. 16 at 11-13 n. 2.  The Claimant states that the Appeals Council considered the additional evidence and does not argue that the Appeals Council erred. *Id*.

The Commissioner maintains that the final decision of the Commissioner is supported by substantial evidence.  Doc. No. 17 at 7-14.  The Commissioner argues that ALJ's rejection of Claimant's allegations of chronic absenteeism is supported by substantial evidence, but the Commissioner does not address the additional evidence provided to the Appeals Council. Doc. No. 17 at 7-14.  Thus, the Commissioner argues that the final decision should be affirmed.

### III.   LEGAL STANDARDS.

#### A.     THE ALJ'S FIVE-STEP DISABILITY ANALYSIS.

Under the authority of the Social Security Act, the Social Security Administration has established a five-step sequential evaluation process for determining whether an individual is disabled. *See* 20 CFR §§ 404.1520(a), 416.920(a).  In *Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001), the Eleventh Circuit explained the five-step sequential evaluation process as follows:

> In order to receive disability benefits, the claimant must prove at step one that he is not undertaking substantial gainful activity. At step two, the claimant must prove that he is suffering from a severe impairment or combination of impairments. At step three, if the claimant proves that his impairment meets one of the listed impairments found in Appendix 1, he will be considered disabled without consideration of age, education, and work experience. If the claimant cannot prove the existence of a listed impairment, he must prove at step four that his impairment prevents him from performing his past relevant work. At the fifth step, the regulations direct the Commissioner to consider the claimant's residual functional capacity, age, education, and past work experience to determine whether the claimant can perform other work besides his past relevant work.

*Id*. (citations omitted). The steps are followed in order.  If it is determined that the claimant is not disabled at a step of the evaluation process, the evaluation will not go on to the next step.

#### B.     THE STANDARD OF REVIEW.

The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g).  Substantial evidence is more than a scintilla — i.e., the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion.  *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995) (*citing Walden v. Schweiker*, 672 F.2d 835, 838

(11th Cir. 1982) and *Richardson v. Perales*, 402 U.S. 389, 401 (1971)); *accord*, *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991).

Where the Commissioner's decision is supported by substantial evidence, the District Court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the evidence preponderates against the Commissioner's decision. *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991); *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991). The District Court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. *Foote*, 67 F.3d at 1560; *accord*, *Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992) (court must scrutinize the entire record to determine reasonableness of factual findings); *Parker v. Bowen*, 793 F.2d 1177 (11th Cir. 1986) (court also must consider evidence detracting from evidence on which Commissioner relied). The District Court "may not decide the facts anew, reweigh the evidence, or substitute [its] judgment for that of the [Commissioner]." *Phillips v. Barnhart*, 357 F.3d 1232, 1240 n. 8 (11th Cir. 2004).

## C. REMEDIES.

Congress has empowered the District Court to reverse the decision of the Commissioner without remanding the cause. 42 U.S.C. § 405(g)(Sentence Four). To remand under sentence four, the District Court must either find that the Commissioner's decision applied the incorrect law, fails to provide the court with sufficient reasoning to determine whether the proper law was applied, or is not supported by substantial evidence. *Keeton v. Dep't of Health & Human Serv.*, 21 F.3d 1064, 1066 (11th Cir. 1994) (reversal and remand appropriate where ALJ failed to apply correct law or the ALJ failed to provide sufficient reasoning to determine where proper legal

analysis was conducted) (citing *Cornelius v. Sullivan*, 936 F.2d 1143, 1146 (11th Cir. 1991); *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990)); *Jackson v. Chater*, 99 F.3d 1086, 1090-91 (11th Cir. 1996) (remand appropriate where ALJ failed to develop a full and fair record of claimant's RFC); *accord Brenem v. Harris*, 621 F.2d 688, 690 (5th Cir. 1980) (remand appropriate where record was insufficient to affirm, but also was insufficient for District Court to find claimant disabled).

This Court may reverse the decision of the Commissioner and order an award of disability benefits where the Commissioner has already considered the essential evidence and it is clear that the cumulative effect of the evidence establishes disability without any doubt. *Davis v. Shalala*, 985 F.2d 528, 534 (11th Cir. 1993); *accord*, *Bowen v. Heckler*, 748 F.2d 629, 631, 636-37 (11th Cir. 1984). A claimant may also be entitled to an immediate award of benefits where the claimant has suffered an injustice. *Walden v. Schweiker*, 672 F.2d 835, 840 (11th Cir. 1982). The District Court may remand a case to the Commissioner for a rehearing under sentences four or six of 42 U.S.C. § 405(g); or under both sentences. *Jackson*, 99 F.3d at 1089-92, 1095, 1098. Where the District Court cannot discern the basis for the Commissioner's decision, a sentence-four remand may be appropriate to allow the Commissioner to explain the basis for his decision. *Falcon v. Heckler*, 732 F.2d 827, 829 - 30 (11th Cir. 1984) (remand was appropriate to allow ALJ to explain his basis for determining that claimant's depression did not significantly affect her ability to work).[4]

---

[4] On remand under sentence four, the ALJ should review the case on a complete record, including any new material evidence. *Diorio v. Heckler*, 721 F.2d 726, 729 (11th Cir. 1983) (on remand ALJ required to consider psychiatric report tendered to Appeals Council); *Reeves v. Heckler*, 734 F.2d 519, 522 n.1 (11th Cir. 1984) (on remand ALJ required to consider the need for orthopedic evaluation). After a sentence-four remand, the District Court enters a final and appealable judgment immediately, and then loses jurisdiction. *Jackson*, 99 F.3d at 1089, 1095.

IV.     **ANALYSIS.**

  In *Ingram v. Commissioner of Social Security*, 496 F.3d 1253, 1262 (11th Cir. 2007), the Eleventh Circuit held that whenever a claimant presents new and material evidence to the Appeals Council, "a reviewing court must consider whether that new evidences renders the denial of benefits erroneous." *Id.*   In this case, Claimant argued her absenteeism due to her medical condition precludes employment.   R. 30-32.   Claimant offered evidence showing numerous multi-day hospitalizations due to her impairments.   R. 249-68, 351-61, 366, 372-74, 396-408, 562-70, 571, 575, 760, 906-07.   Twice during the ALJ's summary of the medical evidence the ALJ stated there was no more medical or opinion evidence of record.   R. 16-17. The ALJ rejected Claimant's argument that she is disabled due to chronic absenteeism by simply stating: "[C]laimant's allegations are not persuasive according to the medical records in evidence and the Claimant's reports of activities during the relevant period."   R. 14.[5]

  After the ALJ's decision, the Claimant presented new evidence to the Appeals Council showing that Claimant was hospitalized for an additional 16 days in 2010 due to stroke, which directly relates to the Claimant's allegations of chronic absenteeism.   R. 912, 922-23.   In its decision denying review, the Appeals Council stated that it "considered" the additional evidence, but "this information does not provide a basis for changing the [ALJ's] decision."   R. 2.   20 CFR § 404.970(b) states that the Appeals Council will "consider" . . .   "new and material evidence . . .

---

[5] The Court notes that while the ALJ provides a largely accurate and detailed review of the record, the ALJ's above-stated reasons for rejecting Claimant's allegations of disability due to chronic absenteeism are conclusory and vague.   R. 14.   *See generally Poplardo v. Astrue*, 2008 WL 68593, *11 (M.D. Fla. Jan. 4, 2008) (failure to specifically articulate evidence contrary to treating doctor's opinion requires remand); *see also Paltan v. Comm'r of Social Sec.*, 2008 WL 1848342, *5 (M.D. Fla. April 22, 2008) ("The ALJ's failure to explain how [the treating doctor's] opinion was 'inconsistent with the medical evidence' renders review impossible and remand is required."). While the cases cited above dealt with the rejection of a treating physician's opinion, in order for the Court to meaningfully review the ALJ's findings in this case, it would have been helpful for the ALJ to provide specific record evidence supporting the ALJ's decision to reject Claimant's allegations of disability due to chronic absenteeism.

only where it relates to the period on or before the date of the administrative law judge hearing decision." *Id*. Therefore, because the Appeals Council specifically "considered" the additional evidence, the Court is persuaded that it found the additional evidence "new and material." *See Flowers v. Commissioner of Social Security*, 441 Fed.Appx. 735, 745 n. 7 (11th Cir. Sep. 30, 2011) (unpublished) (finding that because the Appeals Council "considered" the additional evidence that it is new and material).[6]

In its decision denying review, the Appeals Council did not explain, in any manner, why the new and material evidence does not provide a basis to review the ALJ's decision. R. 2. The Eleventh Circuit has stated that "[w]hen a claimant properly presents new evidence, and the Appeals Council denies review, the Appeals Council must show in its written denial that it has adequately evaluated the new evidence." *Flowers*, 441 Fed.Appx. at 745 (citing *Epps v. Harris*, 624 F.2d 1267, 1273 (5th Cir. 1980)).[7] Thus, the Appeals Council must demonstrate or articulate in some manner that it has appropriately evaluated the new evidence. *Id*. "If the Appeals Council merely 'perfunctorily adhere[s]' to the ALJ's decision, the Commissioner's findings are not supported by substantial evidence and we must remand 'for a determination of [the claimant's] disability eligibility reached on the total record.'" *Flowers*, 441 Fed.Appx. at 745 (quoting *Epps*, 624 F.2d at 1273).

In this case, with respect to Claimant's argument that the Commissioner erred in determining the Claimant's RFC based on the ALJ's rejection of Claimant's allegations of chronic absenteeism, the Court must consider the evidence before the ALJ and the new and

---

[6] In the Eleventh Circuit, unpublished decisions are not binding, but are persuasive authority.
[7] In *Bonner v. City of Pritchard*, 661 F.2d 1206, 1209 (11th Cir. 1981), the Eleventh Circuit adopted as binding precedent the decisions of the former Fifth Circuit.

material evidence submitted to the Appeals Council.  *See Ingram*, 496 F.3d at 1262.  The new and material evidence shows that Claimant was hospitalized for 16 days in 2010 after suffering a stroke.  R. 912, 922-23.  However, in its decision denying review, the Appeals Council failed to articulate any basis for its evaluation of the new evidence.  R. 2.  On appeal, the Court "may not decide facts anew, reweigh the evidence, or substitute [its] judgment for that of the [Commissioner]."  *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005).  Therefore, the Court cannot create its own reasons for why the new evidence supports the ALJ's decision or renders it unsupported by substantial evidence.

While the Claimant does not argue that the Appeals Council erred, because of the Appeals Council's failure to clearly articulate its evaluation of the new and material evidence, the Court is unable to determine whether the RFC is supported by substantial evidence.  As in *Flowers*, the Appeals Council here did not demonstrate that it adequately evaluated the new evidence or did anything more than perfunctorily adhere to the ALJ's decision.  On that basis alone, the case must be remanded to the Commissioner for further proceedings.  *See Epps*, 624 F.2d at 1273 (failure of Appeals Council to demonstrate its evaluation of new evidence makes it impossible for reviewing court to determine whether substantial evidence supports the Commissioner's decision).[8]

## V.    <u>CONCLUSION.</u>

For the reasons stated above, it is **ORDERED** that:

1.   The final decision of the Commissioner is **REVERSED and REMANDED** pursuant to sentence four of Section 405(g) for further proceedings;

---

[8] For the reasons set forth above, because the Court finds that the final decision of the Commissioner must be reversed and remanded, it is unnecessary to address the other issues raised by the Claimant.

2.   The Clerk is directed to enter judgment in favor of Claimant and to close the case.

**DONE and ORDERED** in Orlando, Florida on September 24, 2012.

GREGORY J. KELLY
UNITED STATES MAGISTRATE JUDGE

The Court Requests that the Clerk
Mail or Deliver Copies of this order to:

Shea A. Fugate, Esq.
Law Offices of Shea A. Fugate.
P.O. Box 940989
Maitland, FL 32794


John F. Rudy, III
U.S. Attorney's Office
Suite 3200
400 N. Tampa St.
Tampa, Florida          33602


Mary Ann Sloan, Regional Chief Counsel
Dennis R. Williams, Deputy Regional Chief Counsel
John C. Stoner, Branch Chief
Dana L. Myers, Assistant Regional Counsel
Office of the General Counsel, Region IV
Social Security Administration
61 Forsyth Street, S.W., Suite 20T45
Atlanta, Georgia          30303-8920

The Honorable Angela Miranda
Administrative Law Judge
c/o Office of Disability Adjudication and Review
SSA ODAR
Nat'l Hearing Center
5107 Leesburg Pike
Falls Church, VA 22041

-18-